Case 7:15-cv-00252 Document 22 Filed in TXSD on 03/28/16 Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
March 29, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| MARIO ALBERTO QUINTANILLA, § | |
| § | |
| Petitioner, § | |
| § | CIVIL ACTION NO. 7:15-CV-252 |
| VS. § | |
| § | |
| WILLIAM STEPHENS, § | |
| § | |
| Respondent. § | |

## REPORT AND RECOMMENDATION

Petitioner Mario Alberto Quintanilla, a state prisoner proceeding pro se, initiated this action in December 2014 by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) In September 2009, a jury found Petitioner guilty of capital murder and sentenced him to life imprisonment. The evidence at trial showed that Petitioner brutally murdered Larissa Cavazos during a home invasion that was motivated by his mistaken belief that there would be drug money in her apartment.

In seeking federal habeas corpus relief, Petitioner challenges his conviction on multiple grounds, including (among others) insufficiency of the evidence and ineffective assistance of counsel. Respondent has moved for summary judgment, contending that the petition is time barred. (Docket No. 4.) Respondent also addresses the merits of Petitioner's claims, arguing that they are all meritless and should be dismissed. Petitioner filed a lengthy response to the summary judgment motion. (Docket No. 21.) As to the limitations issue, Petitioner acknowledges that his federal petition was received by the Clerk several days after the one-year limitations period expired; however, he argues that the petition was nevertheless timely because

he mailed the petition "through normal mailing channels" before the expiration of the limitations period. (*Id*. at 6.)

After carefully considering the pleadings in this case, the state court record, and the applicable law, the undersigned concludes that this action should be dismissed. As explained further below, the "prison mailbox rule" does not apply on the undisputed facts of this case, and Petitioner thus filed this federal habeas action after the applicable one-year limitations period expired. There are no exceptional circumstances that would justify equitable tolling. Accordingly, it is recommended that Respondent's motion for summary judgment be granted and that this action be dismissed as untimely.

## I. BACKGROUND[1]

### A. Underlying Conviction

Larissa Cavazos was murdered on December 21, 2005, at the apartment that she shared with her brother, Sergio Cavazos. She was both shot in the upper abdomen and repeatedly struck on the head with a blunt object (probably the same handgun used to shoot her).

On March 21, 2007, a grand jury in Hidalgo County, Texas, returned an indictment charging Petitioner with capital murder. The indictment alleged that Petitioner "intentionally cause[d] the death of … Larissa Cavazos, by shooting the victim with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation."[2] Petitioner pleaded not guilty to the indictment and proceeded to trial.

---

[1] The facts and procedural history set out in the next two sections are taken from the State Court Record filed in this case, the documents submitted by Petitioner and Respondent, and the Thirteenth Court of Appeals' decision addressing Petitioner's direct appeal, *Quintanilla v. State*, No. 13-09-572, 2012 WL 6719449 (Tex. App.—Corpus Christi Aug. 27, 2012, pet. ref'd). (*See* Docket Nos. 1, 11-13, 15, 16.)

[2] Because the specific cause of death was uncertain (due to the victim's multiple life-threatening injuries), the indictment charged Petitioner in several counts that included alternate causes of

At trial, Petitioner's principal theory of defense was that he had an alibi that made it impossible for him to have committed the murder and that the two informants who testified against him are not credible because they are "convicts . . . who have something to gain." (*See* Docket No. 12-14, at 20-33; Docket No. 12-16, at 64-69, 72-82.)  The jury apparently did not believe Petitioner's version of events because they returned a verdict on September 24, 2009, finding him guilty of capital murder.  Four days later, after a sentencing hearing, the jury found that Petitioner would likely commit further acts of violence that would constitute a continuing threat to society, but the jury also concluded that there were sufficient mitigating circumstances to warrant a sentence of life in prison without the possibility of parole, rather than a death sentence.

Petitioner appealed his conviction on several grounds, including insufficiency of the evidence.  In addressing Petitioner's appeal, the Thirteenth Court of Appeals of Texas provided a lengthy and detailed summary of the evidence presented at trial.  *Quintanilla v. State*, No. 13-09-572, 2012 WL 6719449, at *1-9 (Tex. App.—Corpus Christi Aug. 27, 2012, pet. ref'd).[3]  The evidence against Petitioner included the testimony of two jailhouse informants.  Like Petitioner, the two informants had been members of the violent prison gang known as "Hermano Pistoleros Latinos" (HPL), which in English means the "Brotherhood of the Latin Gunslingers, gangsters." *Id*. at *1.  They both testified that Petitioner had admitted to them that he murdered Ms. Cavazos.  The court of appeals summarized the testimony of one of the informants, Jesus Cortez, as follows:

---

death.  Specifically, the indictment charged Petitioner with intentionally causing the death of the victim by either shooting her with a firearm or striking her on the head.
[3]  The Court of Appeals' summary of the evidence is also quoted in full in Respondent's brief in support of his motion for summary judgment. (Docket No. 15, at 4-14.)

Jesus Cortez testified that he had been a member of HPL and was currently incarcerated at the Hidalgo County Jail. Cortez stated that he had grown up with [Petitioner] Quintanilla in the Balboa neighborhood in McAllen. Cortez claimed that he and Quintanilla were members of the Balboa neighborhood gang.

Cortez testified that in the fall of 2006, he arrived at the Hidalgo County Jail, and approximately one week later, Quintanilla was placed there also. According to Cortez, the other members of HPL were awaiting Quintanilla's arrival because Quintanilla had been in fights and arguments with other members of HPL. Specifically, Cortez claimed that Quintanilla had accused Jesus Espinosa ("Escalera" or "the Ladder") of flirting with his girlfriend and had "barricaded himself outside the ... yard from 'Escalera,' ...." Cortez stated that the HPL members had decided to discipline Quintanilla by placing him "on the 'amarilla', which means on the yellow, for six months." This meant that Quintanilla would not be allowed to have any information about HPL and could not vote. Cortez explained that a person "on the yellow" would feel "left out" and "in the dark." Cortez stated that the men surrounded Quintanilla and aggressively told him that he was being disciplined; Quintanilla accepted the discipline.

Cortez testified that shortly after being disciplined, Quintanilla asked to speak with him, so the two went "into the corner and he starts talking." Cortez said that Quintanilla told him he was sad because he had been doing a lot of drugs, his family had "cut him off," and the members of HPL were "treating him kind of cold." Cortez claimed that Quintanilla began crying and said, "Hey, carnal, ... but the thing that bothers me the most is that thing with the 'Chavalona', right." Cortez said, "With the little girl.... 'Chavalona.' That's another term, you know, for a young girl." Cortez testified that he asked Quintanilla "What Chavalona," and that Quintanilla replied, "That girl we killed in Edinburg. And me and Fro." Cortez said that he replied, "Oh, yeah, right. I know what you're talking about. I heard of it, you know. Right."

Cortez stated that he asked Quintanilla to tell him what happened and then testified as follows:

"Well, the thing that I remember asking him is, 'Man, carnal, but that wasn't even the apartment, right?'"

"And then he was, like, 'Yeah, it was carnal. You know, Gotti—Gotti put us the 'tiro,' right?' You know, the—the 'tiro' is like another name for home invasion, right? Like, 'tiro,' you know, we call it, you know."

"And he told us that Gotti had put the tiro and that—you know, that they had gone in and they went in and said, 'You go over there.' (Spanish spoken.) You know, like, 'You go over there, and you go over there,' right? And then he had gone into the room, and then, when the girl sat up, right. Well, no. He said, 'Miro una savanna,' right; like a sheet. 'I saw a sheet,' right; like, 'I saw a sheet.' And he

4

> just said—he does with his hands, like, you know what I mean? He—and he just, like, does with his shoulder, like, 'I hit her,' right? Like, 'I shot her,' right? And then—and then I remember he said that he went up—he went and got her, right, and that, you know—you know what I mean? He started, like, hitting her, like, 'Where's the money,' right? And that the girl was, like, 'No, there's no money. There's no money,' right? Like, you know? 'There's no money.'"
>
> "And that he kept on hitting her and then that's when she was like, 'Okay, okay, I'll get you, you know, some money,' right? And then she was like then she said again, 'No, man, for real, there's no money. I don't have any money.'"
> ....
>
> "[S]o when she finally said, 'No, there's no money,' right, he said, 'Well, fuck the bitch.' You know what I mean? And—and I guess he hit her again. Like, he just, like, 'fuck the bitch'; you know what I mean? That's what he said."
>
> Cortez clarified that Quintanilla had explained that the girl had moved to a sitting position when he saw the sheet "and that's when he ... he shot." Cortez stated that Quintanilla had indicated with his hand that the bullet had hit the girl "somewhere [in the chest area]." According to Cortez, Quintanilla told him that after he shot the girl, he "got her by, you know, by the hair, like ... in this motion." Cortez explained that Quintanilla "made a hand gesture [l]ike if you're wrapping, like, the hand, you know, around the hair." Then according to Cortez, Quintanilla said that the girl said there was no money and he said, "Fuck the bitch." Cortez agreed that he was making the gestures as described by the prosecutor. The prosecutor described Cortez's gestures as follows: "[Y]ou have one hand in a fist as if holding somebody's hair.... With the other hand, you're swinging—.... Towards that fist Your hand is in the shape of a gun."

*Id.* at *7-9.

In addition to describing the testimony of the second informant, Gerardo Garcia, the Thirteenth Court of Appeals also provided a detailed description of other evidence from multiple witnesses that tended to corroborate the testimony of the two informants. Such evidence included testimony showing that Petitioner had previously accompanied Jason Alba Lyons (also known as "Gotti") to Ms. Cavazos' apartment to buy cocaine from another individual, Bobby Foreman.[4] Upon arriving at the apartment complex, Lyons left Petitioner in the car and

---

[4] Foreman was a source of cocaine used by Lyons and was previously unknown to Petitioner. Foreman was friends with Larissa Cavazos' brother, Sergio Cavazos. Foreman was "hanging

5

specifically instructed him to remain there because Lyons did not want Petitioner to know the identity of his source of cocaine.  But Petitioner did not remain in the car.  Instead, Petitioner approached the apartment unit that Lyons had gone into, knocked on the door, and insisted that he wanted Lyons to introduce him to the source of the drugs.  Movant was thus inside the apartment where Ms. Cavazos was killed a few days later, and he had reason to believe (albeit mistakenly) that drugs were being sold there.  *See supra* n.4.  Other corroborating evidence included GPS location data emitted from Ms. Cavazos' phone after her death.  The phone was missing from her apartment when it was searched after her body was found.  The location data placed her phone at an address where Petitioner had "hung out" at the time (according to at least two witnesses, including his ex-girlfriend).

Based on the evidence presented at trial, the Thirteenth Court of Appeals found that the testimony of the informants was sufficiently corroborated and that the evidence as a whole was sufficient to support the jury's verdict.  *Quintanilla*, 2012 WL 6719449, at *10-11, *17.  Having also rejected Petitioner's other claims, the Thirteenth Court of Appeals affirmed his conviction on August 27, 2012.  *Id.* at *17.  Petitioner filed a petition for discretionary review to the Texas Court of Criminal Appeals; however, it was refused on March 27, 2013.  (*See* Docket No. 11-6, at 1.)

B.   **State Habeas Application**

On June 17, 2014—over one year after his petition for discretionary review was refused—Petitioner filed a state application for writ of habeas corpus.  Petitioner challenged his conviction on four grounds, which are essentially the same grounds that he now asserts in his

---

out" with Sergio that night at the apartment where Sergio lived with his sister.  Larissa Cavazos was not present when Foreman came to their apartment to visit her brother.  Tragically, Foreman's chance presence at Ms. Cavazos' apartment that night later proved to be fatal to her.

6

pending federal habeas petition. On July 22, 2014, the presiding state district court judge entered findings of fact and conclusions of law, rejecting Petitioner's state habeas claims and recommending that habeas relief be denied. On November 26, 2014, the Texas Court of Criminal Appeals dismissed Petitioner's first state habeas application "without written order on findings of trial court without hearing."

**C.     Federal Habeas Claims**

On December 9, 2014,[5] the Clerk received Petitioner's instant federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. (Docket No. 1.) Petitioner asserts the following four claims: 1) he was denied his federal and state constitutional right to a public trial; 2) his attorney rendered ineffective assistance of counsel in various ways; 3) the evidence was insufficient to support his conviction; and 4) he was denied his right to a fair trial when his co-defendant was forced to refuse to testify in the presence of the jury.

In answer to the Petition, Respondent moves for summary judgment on the ground that Petitioner's claims are time barred. (Docket No. 15.) Respondent contends that because Petitioner "fail[ed] to prove his utilization of the prison mail system to submit his federal petition," he is prevented from "establishing a filing date other than the date the federal court received his petition in federal court." (*Id.* at 19.) "That date, however, does not establish timely

---

[5] This is the date that the federal habeas petition was initially received by the Clerk (as shown by the Clerk's "received" date stamp on the envelope containing the petition). (*See* Docket No. 1, at 10.) Because Petitioner did not pay the filing fee and instead moved to proceed in forma pauperis, his case was initially opened as a miscellaneous matter. (*See* 7:14-mc-2137.) The undersigned entered an order directing Petitioner to either pay the $5 filing fee or submit additional financial information showing that he was unable to do so. (7:14-mc-2137, Docket No. 3.) In response, Petitioner paid the filing fee, and his federal habeas petition was opened as the instant civil case on June 3, 2015. (Docket No. 1.) The timeliness of his federal petition will be determined not from the date it was opened as a civil case but rather from the date that his original submission should be deemed to have been filed. The parties dispute the proper filing date of Petitioner's federal habeas petition. This issue will be addressed below. *See infra* Part II.A.

7

filing, and AEDPA requires dismissal of the [petition], as it was filed after the expiration of the statute of limitations." (*Id.*)  In support of its motion, Respondent submitted an affidavit from Stephanie DeRamcy, "the custodian of records . . . of the TDCJ," along with the prison mail logs from the Telford Unit where Petitioner was imprisoned when he mailed his federal petition. (Docket No. 16.)  Respondent also addressed the merits of Petitioner's claims, essentially arguing that they all lack merit.

Petitioner responded to the summary judgment motion, arguing that the prison mail logs do not show the date that he mailed his § 2254 habeas petition because he did not use the prison's mailing system.  (Docket No. 21, at 6.)  Rather, he mailed his § 2254 petition to the federal court as "outgoing mail that is legal but [that was] sent out through normal mailing channels." (*Id.*)  Petitioner also addresses the merits of his claims at length.

## II.  ANALYSIS

Petitions for habeas corpus relief filed in federal court after April 24, 1996, are subject to review under the amendments to the federal habeas corpus statutes as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).[6]  In most cases, the one-year limitations period runs from the "date on which the

---

[6] The full text of the AEDPA limitations provision reads as follows:
> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). As the Supreme Court has observed, the "AEDPA seeks to eliminate delays in the federal habeas review process." *Holland v. Florida,* 560 U.S. 631, 648 (2010).

Judgment was entered in Petitioner's case on September 29, 2009, and he had until October 29, 2009, to timely file a direct appeal. *See* TEX. R. APP. P. 26.2(a)(1) (notice of appeal timely filed 30 days after the entry of sentence). Petitioner timely filed his direct appeal on September 29, 2009, and it was pending until August 27, 2012, when the Thirteenth Court of Appeals rejected Petitioner's claims and affirmed his conviction. *Quintanilla v. State*, No. 13-09-572, 2012 WL 6719449 (Tex. App.—Corpus Christi Aug. 27, 2012, pet. ref'd). Petitioner filed a petition for discretionary review to the Texas Court of Criminal Appeals, which was refused on March 27, 2013. Therefore, Petitioner's conviction became final on June 25, 2013, when the time for seeking further review in the U.S. Supreme Court expired. *Roberts v. Cockrell*, 319 F.3d 690, 693-95 (5th Cir. 2003) (finality determined by when the time for filing

---

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d).

further appeals expires, which includes "the ninety-day period to seek further review with the Supreme Court").

Absent some form of tolling, the AEDPA one-year limitations period would have expired on June 25, 2014. Section 2244(d)(2) provides that the one-year limitations period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Here, Petitioner filed a state habeas application, which was pending before the Court of Criminal Appeals from June 17, 2014[7] to November 26, 2014 (163 days). Because the AEDPA one-year limitations period was statutorily tolled during the 163 days in which Petitioner's state application was pending, the one-year limitations period expired on December 5, 2014.

Both Respondent and Petitioner agree that the AEDPA one-year limitations period expired on December 5, 2014. (Docket No. 15, at 18; Docket No. 21, at 4.) However, Respondent contends that Petitioner's federal petition is untimely because it cannot be deemed filed until it was received by the Clerk, which was on December 9, 2014.[8] Petitioner, on the other hand, argues that his petition was timely because it should be deemed filed on the day he

---

[7] This is the date Petitioner signed his state habeas application and, giving him the benefit of the doubt, it is also the earliest date that it could be considered filed. *See Richards v. Thaler*, 710 F.3d 573, 578 (5th Cir. 2013) ("under Texas law the pleadings of *pro se* inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities").

[8] Papers received by the Clerk are physically date-stamped on the day that they are received. As shown by the Clerk's "received" date stamp on Petitioner's envelope containing his federal petition, December 9, 2014, is the date that his petition was initially received by the Clerk. (*See* Docket No. 1, at 10.) The docket entry shows that the petition was scanned into the electronic filing system on December 12, 2014. In making this electronic entry, however, the Clerk erroneously set the filing date as December 8, 2014, rather than December 9, 2014 (the date that the petition was actually received). In any event, whether the petition was received on December 8 or December 9 does not matter because it is undisputed that the AEDPA limitations period had expired on December 5, 2014.

signed and mailed it, which was December 5, 2014. Resolving this issue turns on the application of the "prison mailbox rule."

A.   **The Prison Mailbox Rule**

"In *Houston v. Lack*, the Supreme Court held that a *pro se* prisoner's notice of appeal under Federal Rule of Appellate Procedure 4(a)(1) is deemed filed as of the date it is delivered to prison officials for mailing." *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013) (citing 487 U.S. 266, 270 (1988)). The Fifth Circuit has since "extended this rule, the 'prison mailbox rule,' to other submissions of *pro se* inmates." *Richards*, 710 F.3d at 576 (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998)). "[A] habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing." *Spotville*, 149 F.3d at 376. A benefit of the prison mailbox rule is that it "minimizes disputes and uncertainty over when filing occurs: 'Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.'"[9] *Causey v. Cain*, 450 F.3d 601, 604 (5th Cir. 2006) (quoting *Houston*, 487 U.S. at 275).

Here, applying the prison mailbox rule to the filing of Petitioner's federal petition is now governed by federal rule. Rule 3(d) of the Rules Governing Section 2254 Proceedings provides that "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."[10] However, "[i]f an

---

[9] Consistent with this rationale, the prison mailbox rule does not apply where a prisoner has used a method other than the prison mailing system to file his papers. *See Cousin v. Lensing*, 310 F.3d 843, 846-47 (5th Cir. 2002) (holding that the prison mailbox rule does not apply to "prisoners represented by counsel"); *Dison v. Whitley*, 20 F.3d 185, 187 (5th Cir. 1994) (the prison mailbox rule does not apply when a prisoner uses an agent to mail his petition).
[10] Rule 3(d) was added as an amendment to the Section 2254 Rules in 2004. *See* Rule 3, RULES GOVERNING SECTION 2254 PROCEEDINGS, Advisory Committee Notes, 2004 Amendments.

11

institution has a system designed for legal mail, the inmate must use that system to receive the benefit of [the prison mailbox] rule." Rule 3(d), RULES GOVERNING SECTION 2254 PROCEEDINGS.

Petitioner signed his federal habeas petition on December 5, 2014, which is the same day that the limitations period expired. (Docket No. 1, at 9.) The Clerk did not receive the petition until four days later, on December 9, 2014. (*Id.* at 10 ("received" stamp date); *see also supra* n.8.) Respondent argues that because Petitioner failed to utilize "the prison mail system to submit his federal petition," his petition is deemed filed on "the date the federal court received his petition." (Docket No. 15, at 19.) In support of this argument, Respondent relies on the affidavit of Stephanie DeRamcy, who is "the custodian of records . . . of the TDCJ." (Docket No. 16, at 2.) Attached to her affidavit is the "Incoming/Outgoing Certified & Other Special Services Mail Log" from the Telford Unit, which is where Petitioner was imprisoned when he filed his federal petition. (*Id.*) From December 1, 2014 to December 9, 2014, the prison mail log reflects only one item of incoming mail to Petitioner and no outgoing mail of any kind that was sent by him. (*Id.* at 3-11.)

In response, Petitioner agrees that the prison mail logs do not reflect him mailing anything out, including the pending § 2254 federal habeas petition. (Docket No. 21, at 5-6.) Petitioner explains that he did not utilize the prison mail system to mail his petition. (*Id.* at 6.) Rather, he sent it as "outgoing mail that is legal but sent out through normal mailing channels." (*Id.*)

Under these circumstances, "reference to [the] prison mail logs [is] a straightforward inquiry." *Causey*, 450 F.3d at 604 (quoting *Houston*, 487 U.S. at 275). Petitioner does not dispute that the prison mail logs do not show him mailing anything out using the prison mailing

system; rather, he asserts that he sent his federal habeas petition "through normal mailing channels." Because Petitioner did not use the prison mailing system for legal mail in filing his federal petition, the prison mailbox rule does not apply. Rule 3(d), RULES GOVERNING SECTION 2254 PROCEEDINGS. As such, Petitioner's § 2254 petition is deemed filed on December 9, 2014, the day it was received by the Clerk, and it is thus barred by the AEDPA one-year limitations period.

**B.     Equitable Tolling**

Petitioner does not contend that the circumstances here could qualify for equitable tolling. Nevertheless, in light of his pro se status, this issue will be considered.

Because the one-year AEDPA limitations period is not jurisdictional, there is the possibility that it may be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649. In *Holland*, the Supreme Court stressed that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied," and that this determination is "made on a case-by-case basis." *Id.* at 650, 652. The Fifth Circuit has explained that "equitable tolling is warranted only in 'situations where the plaintiff is actively misled by the defendant ... or is prevented in some extraordinary way from asserting his rights.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)). "The petitioner bears the burden of proving that he is entitled to equitable tolling." *Williams v. Thaler*, 400 F. App'x 886, 889 (5th Cir. 2010) (citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)).

Petitioner has not attempted to meet his burden to show that equitable tolling should be applied, nor does the record reflect the existence of exceptional circumstances that would warrant equitable tolling. There is nothing to suggest that Petitioner was "actively misled" by Respondent or that he was "prevented in some extraordinary way from asserting his rights." *Jones*, 541 F. App'x at 503. Although Petitioner may not have been familiar with the requirements of the prison mailbox rule in this context, "neither his *pro se* status nor his unfamiliarity with the law suffices as a basis for equitable tolling." *Madden v. Thaler*, 521 F. App'x 316, 323 (5th Cir. 2013) (citing *Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir. 1999)).

The mere fact that Petitioner's federal habeas filing was only four days too late is not an exceptional circumstance. It is true that federal courts "must be cautious not to apply the statute of limitations too harshly." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). "At the same time, the Supreme Court has expressed deference to the rules that Congress fashioned concerning habeas." *Id*. (citing *Lonchar v. Thomas*, 517 U.S. 314, 321-23). The "AEDPA was clearly intended to restrict the time limit for filing a federal habeas petition." *Flanagan v. Johnson*, 154 F.3d 196, 201 (5th Cir. 1998).

Furthermore, equitable tolling "is not intended for those who sleep on their rights." *Fisher*, 174 F.3d at 715 (citing *Covey v. Ark. River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)). Petitioner had a year in which to file his federal habeas petition, yet he waited almost the entire year before filing his state habeas application. Like all other federal and state prisoners who wish to pursue habeas relief in federal court, Petitioner had one year in which to file his federal petition, but he did not do so. Avoiding such delay is the primary purpose of the AEDPA one-year limitations period. *Holland,* 560 U.S. at 648 ("AEDPA seeks to eliminate delays in the federal habeas review process"); *Fisher*, 174 F.3d at 713 (observing that "Congress enacted

14

AEDPA, in part, to curb abuse of the writ of habeas corpus" and that the one-year limitations period "will speed up the habeas process considerably").

Because this case presents no extraordinary circumstances that prevented Petitioner from timely filing his petition and because he did not diligently pursue his rights, equitable tolling does not apply.[11] Petitioner's federal habeas claims are thus time barred, and it is unnecessary to address the merits of his claims.

### III. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Docket No. 15) be GRANTED, that Petitioner's § 2254 habeas

---

[11] Although not asserted as a basis for equitable tolling, Petitioner suggests in his briefing that he is innocent. A claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitations period has elapsed. *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1928 (2013); *see also Frey v. Stephens*, 616 F. App'x 704, 708-09 (5th Cir. 2015) (remanding § 2254 case to determine whether there was a sufficient showing of actual innocence to overcome the time bar). However, "tenable actual-innocence gateway pleas are rare." *Perkins,* 133 S. Ct. at 1928. To meet the threshold requirement, a petitioner must present new evidence in support of his claim and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). Here, Petitioner points to no new evidence. Instead, he claims that there is "no physical evidence or eye witnesses [that] connected defendant to [the] murder." (Docket No. 1, ¶ 20 (Ground Two).) In his reply to Respondent's motion, Petitioner "emphatically points out that there is absolutely no physical or scientific evidence that connects him to this murder, nor was the corroboration [of the two informants] sufficient to establish [his] guilt." (Docket No. 21, at 39.) But this is not new evidence showing his innocence; rather, it is argument based on a factual predicate that Petitioner has known all along. Petitioner bases his claim of innocence on his personal knowledge of what happened and on the alleged lack of evidence presented at trial. In addition, Petitioner made similar arguments on direct appeal, and they are no more convincing now than they were then. In deciding Petitioner's direct appeal, the Thirteenth Court of Appeals provided a detailed description of the evidence that was presented at his trial (some of which is summarized in the background section of this report). *See Quintanilla v. State*, No. 13-09-572, 2012 WL 6719449, at *1-9 (Tex. App.—Corpus Christi Aug. 27, 2012, pet. ref'd). Then, as now, Petitioner "complains of the lack of direct and forensic evidence linking him to the offense." *Id*. at *17. As the Court of Appeals concluded, the evidence at trial was sufficient to support the jury's verdict. *Id*. Petitioner's post-conviction arguments fall far short of showing "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Perkins,* 133 S. Ct. at 1935 (citation omitted). In short, this is not one of the "rare" cases in which an actual innocence exception applies.

petition (Docket No. 1) be DENIED, and that this action be DISMISSED. For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the recently-amended § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on procedural grounds. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that all of Petitioner's claims are barred by the AEDPA one-year limitations period. Accordingly, Petitioner is not entitled to a COA.

### NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on March 28, 2016.

*[signature]*
Peter E. Ormsby
United States Magistrate Judge